IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIANNE BRUHN-POPIK, | x | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION FILE NO. |
| RAY MABUS, as Secretary of the United States Navy, | : | |
| | : | |
| Defendant. | | |
| _____ | x | |

**COMPLAINT**

Plaintiff, Marianne Bruhn-Popik, by and through her counsel of record,

Steven K. Fedder of Fedder & Janofsky LLC, as and for her Complaint, respectfully

alleges as follows:

<u>PARTIES</u>

1.

Plaintiff, Marianne Bruhn-Popik, (hereinafter "Plaintiff" or "Ms. Bruhn-

Popik") is a natural born female residing in the State of Georgia.

2.

On information and belief, Defendant, Ray Mabus is the Secretary of

the United States Navy and is being named in his official capacity only, as required by 42 U.S.C. §2000e-16(c).

<div align="center">3.</div>

On information and belief, service on Defendant, Ray Mabus, may be achieved by service upon Paul L. Oostburg Sanz, General Counsel, United States Department of the Navy, 614 Sicard Street SE, Suite 100, Washington Navy Yard, DC 20374-5072; by service on Loretta Lynch, Attorney General of the United States, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530-0001; and by service upon Channing D. Phillips, United States Attorney, 555 4th Street, NW, Washington, DC 20530.

<div align="center">JURISDICTION</div>

<div align="center">4.</div>

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 in that this is an action to recover damages for violation of an Act of Congress providing for equal rights of citizens.  The jurisdiction of this Court is also invoked pursuant to 42 U.S.C. §§2000e *et seq.*, Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII"), and particularly, 42 U.S.C. §2000e-16(c).

## VENUE

5.

Venue is appropriate pursuant to 42 U.S.C.§2000e-5(f)(3) in that the

unlawful employment practices alleged to have been committed are alleged to

have been committed outside the United States, on information and belief

employment records relevant to such practice are maintained in the District of

Columbia, and the Defendant has its principal office in the District of Columbia.

## NATURE OF THIS ACTION

6.

This is an action for legal and equitable relief for Defendant's violation of

Title VII (42 U.S.C. Secs. 2000e *et seq*.) (hereinafter "Title VII") based on sex

discrimination (disparate treatment based on sex) and sexual harassment.

Plaintiff also seeks an award of attorneys' fees and costs, pursuant to 42 U.S.C.

§1988.

## CONDITIONS PRECEDENT

7.

Plaintiff, a Federal civilian employee of the United States Navy (hereinafter

"the Navy"), timely initiated contact with her EEO Counselor on August 26, 2011.

8.

After EEO counseling and issuance of right to file a complaint, Plaintiff

timely filed a complaint alleging sex discrimination (disparate treatment based on

sex) and sexual harassment on December 2, 2011.

9.

On November 19, 2012, the Navy issued a Report of Investigation ("ROI")

with respect to Plaintiff's complaint.

10.

Plaintiff timely requested a hearing before the Equal Employment

Opportunity Commission ("EEOC"), pursuant to 29 C.F.R. §1614.108(f).

11.

By order dated April 1, 2016, the EEOC granted the motion for summary

judgment brought by the Navy.

12.

Pursuant to the aforesaid April 1, 2016 order of the EEOC, the Department

of the Navy issued a Final Order on May 5, 2016.  Said Final Order advised Plaintiff

of her right to bring this action within ninety (90) days from receipt of said Final

Order.  This action is filed within such ninety (90) day period.

13.

All conditions precedent to invoke the jurisdiction of this Court under Title VII have been met.

FACTS

14.

At all relevant times, Plaintiff was employed by the Navy as a Supervisory Contract Specialist. Plaintiff was assigned to the Naval Facilities Engineering Command (NAVFAC) Far East, Resident Office in Charge of Construction (ROICC), Marine Corps Air Station (MCAS) in Iwakuni, Japan from November 7, 2010 to November 6, 2011.

15.

While stationed in Japan, Plaintiff's first-level supervisor was Lt. Pil Park, Resident Officer in Charge of Construction.

16.

While stationed in Japan, Plaintiff's second-level supervisor was Cmdr. Jason Zeda, Facilities Officer.

17.

While Plaintiff was stationed in Japan, Capt. Christopher Lacaria was the Executive Officer for NAVFAC Far East.  On information and belief, as Executive

Officer, Capt. Lacaria was responsible for the overall administration of NAVFAC

Far East.  On information and belief, Capt. Lacaria was stationed in Yokosuka,

Japan.

<div align="center">18.</div>

The Marine Corps Air Station (MCAS) in Iwakuni, Japan, is a small military

installation in a remote, isolated area of Japan.  As such, military and civilian

employees of the Navy and the Marine Corps regularly come into close contact

with one another, both while performing their job duties and while off duty.

<div align="center">19.</div>

In or about November 2010, one Sergeant Major Smith started sexually

harassing Plaintiff at the clubs on base and off base.

<div align="center">20.</div>

In or about December 2010, Plaintiff told Cmdr. Zeda that while at an off-

base club she had gone outside to a common area to talk with a man and that he

had forcibly taken her hand and put it on his penis. Plaintiff did not see or know

that he had taken his penis out of his pants.  Cmdr. Zeda's response was that "I

encouraged her to stay away from the area and be careful in her dress and

conduct [so as] not to give any wrong impressions to the Marines that are on

deployment . . ."  Cmdr. Zeda did not say that he would investigate the incident

<div align="center">6</div>

and on information and belief he did not investigate the incident or direct

anybody else to investigate that incident.

21.

In or about February 2011, Cmdr. Zeda called Plaintiff into his office and

told her that he had received an email about her behavior at Club Iwakuni, a club

frequented by civilian and military employees of the Navy and the Marine Corps.

In response, Plaintiff told Cmdr. Zeta that she was being sexually harassed by

Sergeant Major Smith.  Cmdr. Zeta said that he was not going to get into Plaintiff's

personal business.  Cmdr. Zeda did not tell Plaintiff that he would investigate

Plaintiff's complaint of sexual harassment and on information and belief he did

not undertake or direct anybody to undertake an investigation into Plaintiff's

complaint of sexual harassment.

22.

On or about February 26, 2011, Cmdr. Zeda told Plaintiff that he had

received an email alleging that she had been drunk at the Mardi Gras celebration.

Plaintiff responded that the information was false.  Cmdr. Zeda refused to identify

the person who sent the email and stated that he was going to delete the email.

23.

In or about March 2011, Cmdr. Zeda told Plaintiff that he had received
another email about her alleged behavior at the Staff NCO club after a wine
festival.  Plaintiff asked Cmdr. Zeda who had sent the email and if it was from
Master Sergeant Wade.  Comdr. Zeda responded that he could not tell her
because it was confidential and that he was going to delete the email.  Plaintiff
told Cmdr. Zeda that she was being sexually harassed by one Master Sergeant
Wade.  Cmdr. Zeda did not tell Plaintiff that he would investigate Plaintiff's
complaint of sexual harassment and on information and belief he did not
undertake or direct anybody to undertake an investigation into Plaintiff's
complaint of sexual harassment.

24.

Although Cmdr. Zed did not officially counsel Plaintiff regarding any of the
aforesaid emails, on information and belief, he deemed the allegations against
her to be true without investigating them and without investigating whether the
emails had been sent by persons who were sexually harassing Plaintiff.  Cmdr.
Zeda engaged in sex-based stereotypical thinking as for instance in December
2010, when he unofficially counseled Plaintiff regarding her behavior and dress in
response to her report that a man had forcibly put her hand down his pants.

25.

Cmdr. Zeta engaged in sex-based stereotypical thinking which affected his management decisions regarding Plaintiff.  Thus, Cmdr. Zeda wrote that "Marianne at this point has a reputation of the town slut."  Cmdr. Zeda's sexist attitude and sex-based stereotyped thinking about Plaintiff is further exemplified by his writing that,

> . . . I fear each weekend that I am going to get the call were [where] her exploits . . . ruin the career of some gullible Marine. This station is about 80% young Marines many on deployment and probably a little more riskier than normal. That combination and Marianne is a recipe for disaster.

26.

On information and belief, Cmdr. Zeda and Lt. Park , when speaking to contractors, referred to Plaintiff as "Iwakuni trailer trash."

27.

On or about June 24, 2011, Cmdr. Zeda told Plaintiff that he was making a recommendation to send her home.

28.

In or about July 2011, Plaintiff again told Cmdr. Zeda that she was being sexually harassed.  Cmdr. Zeda did not tell Plaintiff that he would investigate Plaintiff's complaint of sexual harassment and on information and belief he did

not undertake or direct anybody to undertake an investigation into Plaintiff's

complaint of sexual harassment.

29.

On or about July 14, 2011, Cmdr. Zeda told Plaintiff that she would be going

home is 30 -60 days.

30.

On or about July 19, 2011, Cmdr. Zeda told Plaintiff that he could not send

her home due to the fact that the proper procedures had not been followed as

there was not official paperwork to support that action, and she had not been

provided the proper mandatory training for a new supervisor.  Cmdr. Zeda told

Plaintiff that nevertheless she would still be going home.

31.

On that same day, on or about July 19, 2011, Plaintiff complained to Cecil

Hounshell, (FSC Manager/ Supervisor) about the aforesaid conversation with

Cmdr. Zeda and repeated her complaint that Cmdr. Zeda had failed to investigate

and/or take any remedial action when she had complained in February 2011 that

she was being sexually harassed.

32.

On or about July 21, 2011, Plaintiff's leave request was granted with the written caution that she should purchase travel insurance in the event of unforeseen circumstances. Plaintiff had submitted a request for a leave to visit her family in Australia for the upcoming Christmas holiday. Pursuant to the leave request, she would return to her position in Iwakuni, Japan at the end of the leave period. This was different from a curtailment of her tour of duty in Iwakuni, Japan. On information and belief, similarly situated male employees would have their leave requests approved without any similar caveat or cautionary language.

33.

On or about August 17, 2011, Plaintiff's leave slip was approved but with the caveat that, "approval of leave is always contingent on operational or other unforeseen conditions that may arise between the time of leave approval and the actual taking of leave by any employee." On information and belief, no similar caveat was communicated regarding leave slips for similarly situated male employees.

34.

On information and belief, Plaintiff was treated differently from similarly situated male employees on the basis of her gender and on the basis of the

aforesaid sex-based stereotypical thinking which affected how Cmdr. Zeda and

other management personnel viewed Plaintiff and which in turn inevitably

affected all of the management decisions that they made regarding the Plaintiff.

35.

In or about August 2011, Plaintiff complained to one Cmdr. Kenney that she

was being sexually harassed. Cmdr. Kenney responded that NAVFAC Far East is

dealing with those issues and that he was there to deal with the work issues

meaning the status of work being accomplished in the office. Cmdr. Kenney did

not tell Plaintiff that he would investigate Plaintiff's complaint of sexual

harassment and on information and belief he did not undertake or direct anybody

to undertake an investigation into Plaintiff's complaint of sexual harassment.

36.

On or about August 19, 2011, Plaintiff complained to Lt. Park that she was

being sexually harassed.  Lt. Park did not tell Plaintiff that he would investigate

Plaintiff's complaint of sexual harassment and on information and belief he did

not undertake or direct anybody to undertake an investigation into Plaintiff's

complaint of sexual harassment. Instead, Lt. Park said to Plaintiff that he did not

want to know about the matter and told her to let Cmdr. Zeda take care of it.

37.

On or about August 26, 2011, Plaintiff was given a tour curtailment letter

and told that she had to leave the base at Iwakuni, Japan within seventy-five (75)

days.  On information and belief, the decision to curtail Plaintiff tour was based in

part on the aforesaid sex-based stereotypes, and thus constituted discrimination

against Plaintiff on the basis of her sex.  Thus, Cmdr. Zeda wrote that,

> Due to <u>both</u> her work hours <u>and after hours conduct</u> I
> told her that she was in jeopardy of losing her privilege
> to work on station. I told her I wanted to see big
> improvements <u>in both areas</u> if it was going to change my
> mind. . . . <u>her reputation</u> on station <u>is . . . tainted to the
> point where she cannot effectively supervise and be a
> member of the Iwakuni community</u>.

38.

Cmdr. Zeda engaged in sex-based stereotypical thinking, and used

conclusions reached based on such thinking as part of his recommendation to

curtail Plaintiff's tour of duty at Iwakuni, Japan.  Thus as noted above, Cmdr. Zeda

wrote that "Marianne at this point has a reputation of the town slut" and referred

to Plaintiff as "Iwakuni trailer trash" when speaking about her to third parties.

39.

Since, as Cmdr. Zeda himself wrote, the recommendation to curtail

Plaintiff's tour was based in part on Plaintiff alleged "after hours" conduct, the

decision was necessarily based in part on the aforesaid sex-based stereotypes

that Cmdr. Zeda engaged in, and was thus caused by discrimination against

Plaintiff on the basis of her sex.  Therefore, the decision to curtail Plaintiff's tour

of duty amounted to unlawful sex discrimination under Title VII.

40.

In addition, Plaintiff was sexually harassed during her tour of duty at

Iwakuni, Japan by other employees of the Navy and/or the Marines.  When

Plaintiff complained about the sexual harassment on repeated occasions she was

ignored and on information and belief neither Cmdr. Zeda nor anybody else in a

management position at the Navy investigated or caused to be investigated

Plaintiff's complaints of sexual harassment and did not effect any remedial action.

Defendant thus discriminated against Plaintiff on the basis of her sex in violation

of Title VII by allowing Plaintiff to be sexually harassed, by failing to investigate

her complaints of sexual harassment, and by failing to take any remedial action.

41.

As a result of the foregoing, Plaintiff has suffered and continues to suffer

economic loss including back pay and has suffered and continues to suffer mental

anguish.

## FIRST CAUSE OF ACTION
### (Title VII, Sex Discrimination)

42.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 41 to the same force and effect as if set forth separately herein.

43.

Defendant discriminated against Plaintiff on the basis of her sex (sex discrimination) in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §§2000e *et seq*.

## SECOND CAUSE OF ACTION
### (Title VII, Sexual Harassment)

44.

Plaintiff re-alleges each and every allegation contained in Paragraphs 1 through 43 to the same force and effect as if set forth separately herein.

45.

Defendant discriminated against Plaintiff on the basis of her sex (sexual harassment) in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §§2000e *et seq*.

WHEREFORE, Plaintiff seeks the following relief:

1. Compensatory make-whole relief for Plaintiff's economic

damages;

2.      Damages for mental anguish;

3.      Attorneys' fees, expert witness fees, costs and disbursements of this

action;

4.      Appropriate declaratory and injunctive relief;

5.      Interest from an appropriate point until judgment is entered and

post-judgment interest as may be proper;

6.      Such other and further relief as this Court deems appropriate; and

7.      Plaintiff demands TRIAL BY JURY.

This 1st day of August 2016.

<div style="margin-left: 45%;">

s/Steven K. Fedder
Steven K. Fedder, Esq.
DC Bar Number 456719
Fedder & Janofsky LLC
2650 Quarry Lake Drive, Suite 100
Baltimore, Maryland 21209
Telephone: (410)415-0080
sfedder@mdcounsel.com
Attorneys for Plaintiff

</div>